1   **WO**

2

3

4

5

6   **IN THE UNITED STATES DISTRICT COURT**

7   **FOR THE DISTRICT OF ARIZONA**

8

9   Eli Sloan,                                   No. CV-20-08133-PCT-DLR (DMF)
                                                  No. CR-15-08232-PCT-DLR
10                    Petitioner,
                                                  **ORDER**
11   v.

12   United States of America,

13                    Respondent.

14

15

16        Before the Court is the Report and Recommendation ("R&R") of Magistrate Judge

17   Deborah M. Fine (Doc. 51)[1] regarding Petitioner Eli Sloan's Motion to Vacate, Set Aside

18   or Correct Sentence Pursuant to 28 U.S.C. § 2255 (Doc. 5), his supplement to the motion

19   (Doc. 31), a Motion for Bail Hearing in Order to Grant Bail Pending a § 2255 Decision by

20   the District Court (Doc. 47), and Motion to Clarify Counts 3 & 4 (and 6) are not Within

21   Indian Country Within the Meaning of 18 U.S.C. § 1151(c) (Doc. 67).   The R&R

22   recommends that the Motion to Vacate, Set Aside or Correct Sentence be denied without

23   an evidentiary hearing and that the motion for a bail hearing also be denied.

24        The Magistrate Judge advised the parties that they had fourteen days from the date

25   of service of a copy of the R&R to file specific written objections with the Court.  Petitioner

26

27        [1] Citations to the record indicate documents as displayed in the official electronic
     document filing system maintained by the District of Arizona under Case Numbers CV-
28   20-08133-PCT-DLR (DMF) and CR-15-08232-PCT-DLR. Citations to documents within
     Petitioner's criminal case are denoted "CR Doc." Citations to documents in this 28 U.S.C.
     § 2255 matter are denoted "Doc."

1    filed his objections to the R&R on September 7, 2021 (Doc. 59), Respondent filed its

2    response to Petitioner's objections on June 10, 2021 (Doc. 60), Petitioner filed a Motion

3    for Reply to Government's Response to Defendant's Objections to Magistrate's Report and

4    Recommendation on October 1, 2021 (Doc. 62) and another Motion for Reply to

5    Government's Response to Defendant's Objections to Magistrate's Report and

6    Recommendation on November 1, 2021 (Doc. 66).

7        The Court has considered the objections and reviewed the R&R de novo.  *See* Fed.

8    R. Civ. P. 72(b); 28 U.S.C. § 636(b)(1).  Many of Petitioner's objections are unsupported

9    by facts and largely disagree with findings of the jury, or just repeat arguments previously

10   made in his underlying motions.  As explained below, Petitioner has not raised an objection

11   that warrants rejection of the R&R.

## I.    Background

13       On September 15, 2016, after a trial to a jury, Petitioner was found guilty of

14   Kidnapping in violation of 18 U.S.C. §§ 1153 and 1201 (Count 1); Assault with Intent to

15   Commit Aggravated Sexual Abuse or with Intent to Commit Murder in violation of 18

16   U.S.C. §§ 1153 and 113(a)(1) (Count 2); Aggravated Sexual Abuse (vaginal) in violation

17   of 18 U.S.C. §§ 1153 and 2241(a)(1) (Count 3); Aggravated Sexual Abuse (anal) in

18   violation of 18 U.S.C. §§ 1153 and 2241(a)(1) (Count 4); Assault of a Spouse or Intimate

19   Partner Resulting in Substantial Bodily Injury in violation of 18 U.S.C. §§ 1153 and

20   113(a)(7) (Count 5); and Assault of a Spouse or Intimate Partner by Strangling or

21   Suffocating in violation of 18 U.S.C. §§ 1153 and 113(a)(8) (Count 6).  (CR Docs. 90-96,

22   105.)  The R&R accurately summarizes the facts, the evidence, the arguments of the parties

23   at trial, and the findings by the Ninth Circuit on Petitioner's direct appeal.  (Doc. 51 at 2-

24   5.)

## II.    Standard of Review

26       Pursuant to Federal Rule of Civil Procedure 72(b)(2), a party objecting to a

27   Magistrate Judge's R&R must state "specific written objections to the proposed findings

28   and recommendations."  The Court must then "determine de novo any part of the magistrate

judge's disposition that has been properly objected to."  Fed. R. Civ. P. 72(c).  General objections are insufficient.  "The Court is relieved of any obligation to review a general objection to the R&R." *McDowell v. Richardson*, No. CV-11-0716-PHX-DGC, 2012 WL 393462, at *2 (D. Ariz. Feb. 7, 2012); *see also Martinez v. Shinn*, No. CV-19-04481-PHX-DGC-ESW, 2020 WL 6562342, at *2 (D. Ariz. Nov. 9, 2020) ("Because de novo review of the entire R&R would defeat the efficiencies intended by Congress, a general objection has the same effect as would a failure to object.") (internal citation and quotations omitted).

## III.   Standard for Ineffective Assistance of Counsel Claims

Petitioner alleges claims of ineffective assistance of counsel in Grounds 1 through 12 and 15 through 18 of his § 2255 motion.  (Doc. 5 at 5-77, 80-83.)  The R&R correctly explained the standard.

> To qualify for relief pursuant to a claim of ineffective assistance of counsel ("IAC"), a movant must show both that counsel's representation fell below an objective standard of reasonableness and also that counsel's deficient performance prejudiced the defense.  *Strickland v. Washington*, 466 U.S. 668, 687-88, 692 (1984).  In reviewing counsel's performance, courts "indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  *Id.* at 690.  "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time."  *Id.* at 689.  The standard for judging counsel's representation is "highly deferential."  *Id.*  It is "all too tempting" to "second guess counsel's assistance after conviction or adverse sentence."  *Id.*  "The question is whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom."  *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (quoting *Strickland*, 466 U.S. at 690).
>
> To establish prejudice, a movant must show a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Strickland*, 466 U.S. at 694.  A "reasonable probability" is one "sufficient to undermine confidence in the outcome."  *Id.*  The court need not reach both components of *Strickland*. 466 U.S. at 697 ("Although we have discussed the performance component of an ineffectiveness claim prior to the prejudice component, there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one.").

(Doc. 51 at 6.)

## IV.    Objection 1

In his first objection, Petitioner argues that the R&R erred by accepting the factual findings of the jury.  Petitioner asserts that the R&R failed to "resolve the insufficient proof of a direct vital link or nexus of the [fabricated] accusation to the physical aspects of the scene[.]"  (Doc. 59 at 2.)  He argues that there is not enough information to conclude that he was not falsely convicted because the R&R did not consider the footprints, false claims, and blood.  He argues that his counsel was ineffective for not investigating this physical evidence.

Petitioner's weight-of-the-evidence argument relies on conjecture and speculation. Petitioner bears the burden of proof on these claims.  The weight of the evidence, like credibility of witnesses, is a decision for the jury.  The evidence was sufficient to support the jury's verdict.  Petitioner has not presented evidence that overcomes the overwhelming evidence of his guilt at trial.  Petitioner's attempt to shift his burden of proof to the R&R to "resolve the insufficient proof" does not create an issue of fact and does not warrant an evidentiary hearing.  Petitioner's bare assertions that the witnesses made false accusations, and his arguments and alternative theories about how the facts do not fit the physical evidence, are insufficient to overcome the jury's findings.

Petitioner further argues that the R&R should have recognized his attorneys failed to meet an objective standard of reasonableness because they did not explore photographs, footprints, blood drops on the ground at the scene, or blood stains inside the car.  He claims that the R&R did not point to any photographs of the footprints at the scene that showed an altercation between the victim and him, and that "the R&R cannot provide this court with this vital link or nexus[.]"  (Doc. 59 at 2.)  Because of the lack of footprint evidence, he claims both that the R&R erred by accepting the jury's determination of the facts and that his attorneys were ineffective for not investigating and obtaining the exculpatory physical evidence.

The R&R correctly found that Petitioner has failed to show any of this evidence was

available to be examined by his lawyers or, more importantly, relevant.  (Doc. 51 at 26.)

The R&R correctly noted that nothing offered by Petitioner suggests any reasonable

attorney would have explored that evidence.  Petitioner has offered no expert opinion that

his lawyers fell below the objective standard of reasonableness and has not shown what the

photographs or other evidence would have been.  He has not shown that any of the

investigation he claims his attorneys should have performed would have resulted in the

discovery of evidence helpful to his case.  He has not shown a reasonable probability that

any undiscovered evidence would have changed the outcome of the trial.

Petitioner also argues that the R&R erred by recommending no evidentiary hearing

be allowed.  A court must grant an evidentiary hearing "[u]nless the motion and the files

and records of the case conclusively show that the prisoner is entitled to no relief[.]"  28

U.S.C. § 2255(b).  Here, the factual disputes Petitioner claims warrant an evidentiary

hearing are unsupported accusations that his attorney and his investigator acted in "bad

faith" with "fraudulent intent" in order "to suppress the truth."  "In any ineffectiveness

case, a particular decision not to investigate must be directly assessed for reasonableness

in all the circumstances, applying a heavy measure of deference to counsel's judgments."

*Strickland*, 466 U.S. at 691.  Petitioner's counsel, Ms. Anderson, determined that the

passing of time, the winter weather, the absence of a precise location, and the passage of

many other people through the crime scene following the assault would make the

evidentiary value of footprints at the crime scene doubtful, and the R&R correctly found

that determination was a reasonable strategic choice.  (Doc. 51 at 26.)  Although Petitioner

argues that his version of the events on October 4, 2015, could have been established

through documentation of footprint evidence (Doc. 5 at 46), his reliance on this possibility

is misplaced.  Officer Mann testified that within an hour and a half of the events

surrounding Marcella's car, the only recognizable footprints around the car were those of

the people present when Mann arrived at the scene.  (CR Doc. 180 at 156.)  Further, Officer

Mann testified, consistent with Petitioner's own statements, that it rained at the crime

scenes during the night of October 4, 2015.  (*Id.* at 173.)

Other than his speculation about what the physical evidence might have shown, Petitioner has not shown that the physical evidence and footprints would or could have had any exculpatory value. He has not met his burden of showing that his attorneys provided ineffective assistance. He has not shown that the outcome of the trial probably would have been different had his lawyers investigated the matters raised in his motion. The R&R correctly found that no evidentiary hearing is warranted. Objection 1 is overruled.

## V.    Objection 2

Petitioner's second objection challenges the R&R's use of the term "Indian reservation" instead of "Indian Country." Petitioner objects to the R&R's finding that jurisdiction existed over him pursuant to the Indian Major Crimes Act ("IMCA") for the events that occurred on or near the state highway that ran through the reservation. The R&R correctly found that the jurisdiction of this Court was established at trial. Petitioner has not offered evidence to challenge that finding. There is no genuine dispute that the crimes for which Petitioner was convicted occurred within the confines of the Navajo Reservation. In fact, 18 U.S.C. § 1151 defines "Indian Country" to include "rights-of-way running through the reservation." The R&R correctly explained:

> [Petitioner's] argument is incorrect. In *United States v. High Elk*, the Eighth Circuit rejected an Indian appellant's argument that the federal courts lacked jurisdiction over a crime charged under the IMCA, committed by the appellant against another Indian on a section of South Dakota Highway 63 running through the Cheyenne River Indian Reservation. 902 F.2d 660, 661 (8th Cir. 1990). The appellant argued that the state had assumed exclusive jurisdiction over highways on Indian land under Public Law ("P.L.") 280 which allowed states to assume jurisdiction over Indian land within their boundaries[.]" *Id.* The Eighth Circuit concluded there was no authority holding that federal courts lacked jurisdiction under the IMCA in states like South Dakota that had assumed jurisdiction under P.L. 280. *Id.* That conclusion holds with even greater force here because Arizona has not adopted P.L. 280. *State v. Zaman*, 194 Ariz. 442, 445, 984 P.2d 528, 531 (1999) (Feldman, J., dissenting); *Tohono O'odham Nation v. Schwartz*, 837 F.Supp. 1024, 1029 (D. Ariz. 1993).

(Doc. 51 at 13.) Objection 2 is overruled.

## VI.    Objection 3

Petitioner's third objection complains that defense counsel used "material perjuries of Melinda" during opening statements to the jury, including the testimony of Melinda that she kicked Petitioner in the groin.  (Doc. 59 at 5.)  This objection lacks factual support (the fact that Petitioner disagrees with the testimony does not establish that it is incorrect, untruthful, or amounts to perjury), and Petitioner fails to indicate how the attorney would have known of the perjury or how removing that statement from the opening statement would probably have resulted in a different outcome at trial.  The R&R's determination on this claim is correct.  Objection 3 is overruled.

## VII.    Objection 4

In his fourth objection, Petitioner complains that the R&R improperly found that Grounds 13, 14, and 19 of his § 2255 motion are procedurally barred.  Petitioner does not explain why the R&R's findings are incorrect, other than to say it used a "failed direct appeal."  His reliance on *Massaro v. U.S.*, 538 U.S. 500 (2003) for the proposition that a claim of prosecutorial misconduct not raised on direct appeal is not procedurally barred is misplaced.  *Massaro* involved a claim of ineffective assistance of counsel, whereas Petitioner's fourth objection concerns a claim of prosecutorial misconduct.  The Court in *Massaro* held that a claim of ineffective assistance of counsel may be brought in a collateral proceeding under § 2255, regardless of whether it could have been raised on direct appeal. The Court explained that requiring a criminal defendant to bring an ineffective assistance of counsel claim on direct appeal was a waste of resources because an ineffective assistance of counsel claim often involves the development of a factual predicate, a process better suited for the trial court than the appellate courts.  *Id.* at 505-507.  The same concerns do not exist with a claim of prosecutorial misconduct.  The R&R's determination is correct. Objection 4 is overruled.

## VIII.    Objection 5

Petitioner's fifth objection argues that the R&R "misapplies the 'offense' or multiple punishments for 'one offense.'"  (Doc. 59 at 5-6.)  He argues that the charges violate the Double Jeopardy Clause because the bruises on the victim were, according to

Petitioner, caused by her sister, Marcella.  He argues that he should get an evidentiary hearing to "exclude Marcella criminal elements test." (*Id.* at 5.)  He argues that the R&R was factually wrong when it found that the bruises on the victim were from Petitioner kicking her with steel toe shoes, knocking her down, and dragging her away on her back.

Petitioner's disagreement with the finding of guilt by the jury and the R&R's recitation of the facts supporting those findings does not create an issue of fact.  The jury heard the evidence and Petitioner presents nothing, other than bare allegations and argument, that disputes those facts.  Petitioner testified to those same facts and allegations at trial and the jury did not believe him.  This action is not a second trial, where Petitioner presents the same facts he presented to the jury and the Court second-guesses the jury to reach its own factual conclusions.  The jury is the finder of fact and it determined that Petitioner, not Marcella, drug the victim involuntarily into the wilderness and assaulted her repeatedly.  There is no factual or legal basis for the arguments contained in this objection to the R&R.

The R&R correctly determined that Petitioner's argument that he was improperly charged for crimes he contends were committed by the victim's sister is not a claim under the Double Jeopardy Clause.  Objection 5 is overruled.

## IX.     Objection 6

In his sixth objection, Petitioner argues that the Court should decline to follow *United States v. Zepeda,* 792 F.3d 1103, 1106 (9th Cir. 2015) (en banc), because "it is unworkable and/or badly resolved." (Doc. 59 at 7.)  *Zepeda* clarified what must be proven to establish jurisdiction under the IMCA.

The R&R correctly followed Ninth Circuit precedent by analyzing Petitioner's jurisdictional/ineffective assistance of counsel argument pursuant to *Zepeda.*  The R&R correctly found that Petitioner had knowingly and voluntarily stipulated to the *Zepeda* elements at trial, that the stipulation was a reasonable trial strategy, and that he has not shown that any of the elements that he stipulated existed did not in fact exist.  The Court declines Petitioner's request to ignore *Zepeda.*  The R&R correctly determined that

Petitioner's claim of ineffective assistance counsel based on the failure to raise a jurisdictional motion is baseless.  Objection 6 is overruled.

**X.     Objection 6A**

Petitioner's next objection at page 13 of his objections (Doc. 59 at 13) is also labeled as his sixth objection.  For purposes of this order, the Court will refer to this objection as Objection 6A.  Objection 6A re-urges the argument that Petitioner's trial counsel was ineffective for failing to challenge the constitutionality of the Indian Civil Rights Act ("ICRA").  He argues that his convictions for misdemeanors in tribal court, used against him in trial and sentencing, were unconstitutional because he did not have a right to counsel during the tribal court criminal proceedings.  He argues that his counsel should have filed a motion to challenge the tribal court convictions by moving to find the ICRA unconstitutional.

The R&R correctly found that Petitioner was not entitled to relief for three separate reasons.  First, he did not identify any specific tribal court convictions.  Second, the Supreme Court in *United States v. Bryant*, 579 U.S. 140, 154-57 (2016) rejected the argument that a defendant's uncounseled tribal-court convictions should not be used as predicate offenses in federal prosecution.  Third, his § 2255 motion was not the proper vehicle for raising a constitutional claim.  Objection 6A is overruled.

**XI.    Unnumbered Objection at Page 15**

In his next objection, an unnumbered objection at page 15 of Doc. 59, Petitioner claims that the R&R misapplied the *Strickland* standard to the "fruit of poisonous tree test." Based on nothing more than speculation, Petitioner claims that his attorneys were ineffective for not filing a motion to suppress evidence that allowed him to be framed.  He argues that a motion to suppress evidence seized through the consent of a third party, Chester, who owned and controlled the premises searched, would have been successful because Chester would not have consented to the search if he was told the search was being conducted to find evidence to incriminate Petitioner.

The R&R correctly found the search lawful.  Chester owned and controlled the

property searched and had the authority to consent to the warrantless search. *United States v. Matlock*, 415 U.S. 164, 170-71 (1974). Petitioner offers nothing more than his speculation that Chester would not have consented to the search. There is no evidence that trial counsel fell below the applicable standard by failing to file a motion to suppress or that such a motion could have been, let alone probably would have been, successful. This objection to the R&R is baseless. The unnumbered objection at page 15 is overruled.

## XII.   Objection 8

In Objection 8, Petitioner claims that the R&R made incorrect factual determinations and misapplied *Batson v. Kentucky*, 476 U.S. 79 (1986). He claims the R&R should have found that his trial counsel was ineffective for not raising a challenge to the release of a juror pursuant *Batson* and *Flowers v. Mississippi*, 139 S.Ct. 2228 (2019) during jury selection. He argues that his trial counsel should have raised a *Batson* challenge to the release of a juror excused for cause because of a hearing aid that was emitting a noise that could not be fixed and was distracting to the other jurors.

This is not a case where the prosecution used a peremptory challenge to remove a juror of color from the jury with no valid articulable reason, the scenario the Supreme Court addressed in *Batson*. At trial, this Court found during jury selection that the juror's hearing aids were making distracting noises that could not be fixed. There was a reason for the release of the juror unrelated to race. *Batson* is inapplicable. There was no basis for Petitioner's counsel to raise a *Batson* challenge to the release of the juror. The R&R correctly determined that there is no evidence that Petitioner's attorney failed to meet the objective standard of reasonableness. This objection to the R&R is baseless. Objection 8 is overruled.

## XIII.   Objection 9

Petitioner's ninth objection involves his claim that his trial attorneys failed to investigate and uncover exonerating evidence at the crime scene. He alleges that the R&R erred when it rejected his claim that his counsel was ineffective for not visiting the crime scene at Route 6486 and gathering footprint evidence. He claims the physical evidence at

the crime scene would have disproved, among other allegations, that he beat the victim in the car. He claims footprints at the scene would have exonerated him. This argument, like many others, is not supported by facts and boils down to Petitioner's disagreement with the jury's verdict and his speculation about what other potential evidence might have been found. The jury believed the victim and disbelieved Petitioner. None of the physical evidence that Petitioner claims should have been discovered or examined would have probably changed the outcome of the trial.

The facts of the case do not lend themselves to impeachment by physical evidence that may have existed at the crime scene for a short window of time. Petitioner admitted most of the allegations against him. His testimony at trial was that his acts were innocent, and the victim and her sisters presented the facts in a false light, framing him. For example, the victim testified Petitioner broke the car window where she was located with his hand and drug her out by her throat and hair. (CR Doc. 131 at 19-21, 24-25.) Petitioner admitted that he broke the window with his hand but testified that the window inexplicably "folded down" when he pressed it with his fingers. (CR Doc. 123 at 62-63.) He testified that he "helped" the victim from the vehicle. He denied that he drug her from the car by her hair, but rather removed her with a loving touch, "as a loving husband would to calm my wife down, like a blessing, like a missionary would give a blessing to somebody in need[.]" (*Id.* at 66-69.)

Other examples of the contrast between the trial evidence and Petitioner's explanation for his actions include the testimony of the victim and her sister, Melinda Mae Cowboy. They both testified that, after forcibly pulling the victim from the car, Petitioner physically forced the victim against her will into the desert wilderness on a cold night while she was barefooted. (CR Doc. 131 at 19-21, 24-25; CR Doc. 140 at 38; CR Doc. 180 at 38-39.) Petitioner testified that the victim willingly accompanied him into the "bush" for her own good, first because there was a dangerous person named Raula coming to their location, and second because Child Protective Services would remove her child if police found her intoxicated. (CR Doc. 123 at 68-72.)

Petitioner testified that the people who witnessed him taking his wife misunderstood the way he was pushing her into the bush. "They said I was pushing my wife and the way that they painted the picture is that I was pushing my wife in some violent manner, which is my—like the term was used out of context because in work I'm a foreman, I'm a firefighter, and why you push crew, push crew or hurry somebody along it doesn't mean that you're pushing them to the ground in a negative aspect. We were trying to leave as far as we can for good reason." (*Id.* at 73.)

Petitioner denied that the victim was barefoot. He testified that she was wearing sandals when they started and became barefoot only after they slipped off. When that occurred, Petitioner testified that that he gave her his boots. (*Id.* at 78-79.) The victim testified that as he was forcing her to walk in the desert, he knocked her to the ground, choked her, punched her in the head and severely injured her ankle when he tried to break it by jumping on it. (CR Doc. 131 at 26.) Petitioner denied jumping on her leg but agreed that the victim suffered an ankle injury so severe that he thought it was broken. (CR Doc. 124 at 76.)

Witnesses testified about calling the police and efforts to locate the victim after she was taken into the bush by Petitioner. (CR Doc. 180 at 42, 55.) There were five to ten people who came to the location yelling for the victim and Petitioner. (CR Doc. 180 at 155-157.) Police tried tracking techniques to find them. (*Id.* at 158.) Petitioner testified that, although the victim accompanied him voluntarily, her sister called shortly after they entered the bush. He purposely broke the victim's phone when he saw it was her sister calling. (CR Doc. 123 at 76.)

The victim testified that, after Petitioner broke her phone, she was violently forced by Petitioner to have anal and vaginal sex on the desert ground, in the cold. Afterwards, her back was covered in cactus needles. (CR Doc. 131 at 17-33; CR Doc. 124 at 79-80.)

Petitioner claimed that his wife voluntarily accompanied him into the bush and that she directed his actions. Petitioner testified that he had sex with the victim only because she insisted, despite his strong resistance. He testified that he did not tell the victim to dig

her grave, but that it was the victim who ordered him to dig the hole so they could shelter from the cold rain and hide from the people searching for her.  He testified that he did not want to have sex and tried to avoid having sex, but the victim relentlessly sought it.

The jury did not believe Petitioner's explanation for the sex he admits he and the victim engaged in out in the bush.  "She propositions me and I say to my wife, 'I don't think I can.'  And she says, 'No, honey, please, let's make love.'  And I tell her, 'No, I don't think I can.' . . . it just wasn't the proper setting."  Nor did the jury believe that the victim would not take no for an answer.  "I tell her again that I don't think I could even make love at the point because I am not emotionally, physically or any thinking of making love at that very moment.  My wife continues to ask me and I tell her that I don't even think I could get aroused right now because it's just not the situation at the time."  (CR Doc. 123 at 77.)  Nor did the jury believe that, despite Petitioner's best efforts to avoid having sex, the victim would not relent.  "She reaches out to me on her knees with her left hand and tells me sincerely, please, let's make love, and again I said I'll try but I don't think I could.  So she took off the bottom of her pants.  I took off my pants and we kneeled down, and I tried to make love but I wasn't aroused . . . I got back up and she asked me again, and I said, look, it's not that I don't want to make love, it's not that I can't make love, it's just kind of a spur of the moment, out-of-the-blue thing, and I suggest that if you could give me - - maybe try giving me a blow job.  She did.  It took about five seconds.  I got aroused.  We did it missionary style for about five minutes . . . It was what I would call a quickie."  (*Id.* at 77-78.)

To reach its verdict, the jury believed the victim's testimony about the events surrounding the death threats.  She testified that Petitioner forced her to dig a hole under a tree near Highway 160 to serve as her grave.  (CR Doc. 140 at 31.)  "This is where you are going to die.  This is where you are going to be buried."  (*Id.* at 32.)  She testified that when a "cop unit" searching for her stopped on the road near the hole and shone a spotlight, Petitioner got on top of her, covered her mouth and told her not to say a word or scream.  (*Id.* at 28.)  The victim testified that she wanted the police or Raula to find her.  (*Id.* at 26-

29.)

Petitioner's explanation for digging a hole to hide from the victim's family and the police as they frantically searched for her was that he and the victim were afraid of Raula finding them.  Hiding from Raula was a "life-and-death situation."  (CR Doc. 123 at 69-71.)  He testified that it was dark, cold, and rainy, and he was exhausted.  He testified that digging the hole was his way of obeying the victim who ordered him to find a place to keep them warm.  He testified that they dug a hole under a tree to shelter the two of them to stay warm.  (*Id.* at 92-94.)  The shelter was built for warmth and to avoid detection, "as my wife wished."  (*Id.* at 94.)

When Petitioner was impeached at trial with his prior statement to the FBI, he changed his testimony about the number of times he and the victim had sex.  He at first denied having sex more than once with the victim that night.  However, after being confronted with his statement to FBI Agent Sutherland, he admitted that he had sex with the victim multiple times.  (CR Doc. 169 at 71-72.)  He described the first sexual encounter as a quickie.  He testified that leading up to another sexual act, the anal sex, there was no conversation.  The anal sex occurred as the result of body language between a husband and wife.  He didn't know she was laying in cactus but discovered the next day that her back was covered with thorns.  (CR Doc. 123 at 73-74; CR Doc. 124 at 69-76.)  The jury did not believe Petitioner's testimony and, given his trial testimony, there was nothing counsel could have done to change the outcome of the trial.

In addition to the inconsistencies within his testimony, an inherent problem with Petitioner's claims that his counsel missed finding exonerating evidence is that he has not described any allegedly missed exonerating evidence that is material or relevant.  He has not shown that there is any evidence that should have been discovered that could have probably changed the outcome of the trial.  This is not a case of "who done it" or "where was it done."  Petitioner admitted in his trial testimony to having committed the acts upon which the charges are based.  The jury did not believe his explanations.

There has been no showing that any examination of the physical evidence Petitioner

claims his attorneys should have performed was necessary to meet the objective reasonable standard or that any examination would have resulted in the discovery of evidence that would have supported his consent defense and likely changed the outcome of the trial. Petitioner offers no reason, other than his speculation, that had the crime scene been explored and had the footprints and other physical evidence been preserved, the outcome of the trial probably would have been different.  The R&R did not err.  Objection 9 is overruled.

**XIV.   Objection 10**

In Objection 10, Petitioner argues the R&R erred when it did not accept his claim that he was framed, and the DNA evidence of the blood on the victim's blouse would have exonerated him.  He claims a DNA examination of the victim's clothes would have established that it was his blood, not the victim's, on her clothes.

The jury believed the victim's testimony that she was forced into the wilderness on a cold, dark, and rainy night, barefoot with a severely injured ankle, threatened with death and repeatedly raped.  The jury did not believe Petitioner's testimony that he took her by force into the wilderness for her own good, to protect her from CPS and a boyfriend, who he feared could be in the area. The jury did not believe Petitioner that the sex was consensual, that the victim, not he, wanted to engage in vaginal and anal sex while she lay on the cold hard ground in the rain with cactus thorns beneath her.  The jury did not believe Petitioner's testimony that he gave in after the victim repeatedly begged for sex, out of respect for her as a loving husband.  (CR Doc. 123 at 70-87, 93-97; CR Doc. 124 at 74-76.)

Petitioner has not shown that, given the facts of his case, any attorney acting at the objective standard of reasonableness would have requested a DNA test.  At trial, neither party presented evidence nor argued that "there was significant bleeding."  (CR Doc. 139 at 2.)  Petitioner testified about substantial physical and sexual contact between the victim and him.  Petitioner has not offered evidence, other than his speculation, about what the DNA test of the blood found on the shirt would have revealed.  Most importantly, though,

he has not shown that the outcome of the trial probably would have been different if the DNA test would have shown that the blood on the victim's clothes was his.  Objection 10 is overruled.

### XV.   Objection 11

Objection 11 argues that the R&R erred by not finding Petitioner's trial counsel was ineffective for failing to "put on evidence of the (fake) victims alleged father's alleged attempt to murder Movant."  (Doc. 59 at 18.)  Petitioner's trial counsel, Ms. Anderson, explained the strategy in directing Petitioner away from accusations against the victim's father.  She explained that she focused Petitioner's testimony on relevant reasons why he thought the victim's father disapproved of Petitioner's relationship with the victim, and the victim's practice of spending time with Petitioner despite her father's strong and outspoken disapproval, evidence that was directly related to the defense strategy to establish the victim's motivation to lie.  (CR Doc. 123 at 124-129; Doc. 32-1 at 11, ¶ 24.)  The R&R correctly found that Defense counsel's approach reasonably and strategically focused on evidence that was corroborated by multiple witnesses, such as the enmity the victim's father had for Petitioner and the impact this might have on the witnesses' motivation to fabricate, rather than on Petitioner's uncorroborated claim that the victim's father had attempted to kill him by sabotaging a vehicle.

Though unclear from the objection, Petitioner seems to argue that Ms. Anderson elected not to speak with the victim's father due to a potential conflict of interest.  (Doc. 5 at 13-14.)  This is not an issue raised in the § 2255 motion and therefore must be denied. Objections to the R&R are not the place to assert new claims.  Nonetheless, the argument fails on its merits.  Petitioner has not shown that Ms. Anderson actively represented conflicting interests in a manner that affected her performance. *See Cuyler v. Sullivan*, 446 U.S. 335, 348 (1980).

The R&R correctly found that Petitioner failed to establish either prong of the *Strickland* test.  Objection 11 is overruled.

### XVI.   Objection 12

In his twelfth objection, Petitioner argues that the R&R erred by not finding that his trial counsel provided ineffective assistance by not introducing evidence of "the (fake) victims and her sisters' motives to lie." (Doc. 59 at 19.) However, the R&R points out counsel's cross examination of the victim and her sisters on their motives to lie and use of the motives to lie in her closing arguments. (Doc. 51 at 29.) The R&R correctly found that the record establishes Defense counsel made the victim's and her sisters' motives to lie a primary element of the defense. (*Id*. at 30.) Accordingly, the R&R correctly found that Petitioner failed to establish either prong of the *Strickland* test. Objection 12 is overruled.

**XVII. Objections 13, 14 and 15.**

In these three objections, Petitioner complains that the R&R erred by not finding his counsel ineffective for not seeking out and presenting evidence that the victim suffered injuries at the 7-Eleven and in the manner he described. He complains that his attorneys were ineffective for not understanding which gas station from which to seek a security video. He claims the video would show the victim injured herself, before he took her into the wilderness, when she fell at the 7-Eleven. He claims that this would have been proven by the store's security video. Petitioner contends that his attorneys were ineffective for going to the wrong locations without consulting with him about where the "exculpatory video" could be found. (Doc. 59 at 19.) He argues the prosecutors put on the best liars and the best perjurers to testify about the victim's injuries and that his lawyers should have called witnesses to support his clams about how the victim was really injured.

The R&R correctly explained that, contrary to Petitioner's claim, his counsel on direct examination asked Petitioner questions that established in detail his recollection of each of the circumstances identified above. (CR Doc. 123 at 38 (the victim falls into the car door); *Id.* at 61-66 (Marcella's attack of the victim); *Id.* at 66-69 (Marcella called Raula McCartney); *Id.* at 74, 79, 87 (the victim injured her ankle by stepping on a dirt clod); *Id.* at 84-86, CR Doc. 124 at 21-22, 146, 151-152, RT 9/14/2016 (Movant repeatedly struck the victim to keep her awake and prevent her from overdosing).

1    The R&R found the strategy explained in Ms. Anderson's declaration to be

2    reasonable.  Ms. Anderson explained that the Defense had decided that the "most viable

3    defense strategy was to: (1) question, or attempt to discredit, the credibility of the alleged

4    victim, her ability to recall, and her motive to lie; and (2) question the source of her

5    injuries." (Doc. 32-1 at 5 ¶ 10.)  The R&R correctly found that Ms. Anderson's declaration

6    explained that she expected Petitioner to testify about the events of October 4 and 5, 2015,

7    and about his position on why the victim would be motivated to fabricate her allegations

8    against him.  (*Id.* at 5-6 ¶ 10.)

9    The R&R pointed out that, despite Petitioner's assertions to the contrary, Ms.

10   Anderson argued in her closing that the physical evidence was "perfectly consistent" with

11   Petitioner's testimony about how the victim received her injuries.  She argued that the jury

12   should resolve reasonable doubt about how the victim received her injuries in favor of

13   Petitioner. (CR Doc. 134 at 42, RT 9/14/2016.)  The R&R also discussed Ms. Anderson's

14   argument reminding the jury of Petitioner's description of Marcella's attack of the victim

15   in the car and that Marcella had called Raula for help.  (*Id.* at 46-47, 48.)  Ms. Anderson's

16   closing also emphasized Petitioner's explanation that he had no alternative to keeping the

17   victim from overdosing other than shaking her to revive her, holding her up by her face,

18   and hitting her on both sides of her head to get her to respond after she had apparently

19   blacked out.  (*Id.* at 53-55, 57.)  Ms. Anderson's closing further highlighted Petitioner's

20   explanation that the victim was wearing Petitioner's boots when she twisted her ankle.  (*Id.*

21   at 57.)  Ms. Anderson asserted that there was no reason to believe this accident was

22   Petitioner's fault.  (*Id.* at 57-58.)

23   The R&R determined that the defense team exercised due diligence in its

24   investigation and made strategic decisions about which petitioner now complains.

25   Petitioner has offered no evidence that counsel's preparation or strategy failed to meet the

26   objective reasonable standard for criminal defense attorneys.  Ms. Anderson explained that

27   Petitioner's defense team interviewed the "percipient witnesses."  (Doc. 32-1 at 6 ¶ 11.)

28   She stated that the Defense expected the prosecution to call Marcella as a witness to testify

1    she had seen Petitioner assault and kidnap the victim on October 4, 2015, and had "prepared

2    a cross-examination designed to both impeach [Marcella] regarding the alleged assault and

3    kidnapping and draw out helpful information," including the victim's relationship with

4    their father, their father's disapproval of the victim's relationship with Petitioner, and the

5    victim's actions intended to conceal her continuing relationship with Petitioner from their

6    father.  (*Id.* at 10 ¶ 23.)  When the prosecution decided not to call Marcella, the Defense

7    team considered whether to call her as a defense witness, but elected not to, concluding

8    that "her testimony would do more harm than good[]" because Marcella was likely to

9    present as "a third eyewitness to inculpate [Petitioner] in a violent assault and kidnapping"

10   which could only bolster the prosecution's case. (*Id.*)  Ms. Anderson explained that

11   Marcella's testimony might have been "acceptable damage if she also had crucial evidence

12   to provide that furthered other aspects of our theory of the case and that we could not get

13   in through other sources."  (*Id.* at 10-11.)

14         After concluding that evidence favorable to the Defense had already come in during

15   the testimony of other witnesses, the Defense determined it would be too risky to call

16   Marcella because her testimony could bolster the victim's trial testimony.  (*Id.*)  The R&R

17   correctly concluded that Defense counsel's decision not to call Marcella was a reasonable

18   strategic decision.  Petitioner has not offered evidence to the contrary.  Petitioner fails to

19   show that Defense counsel's strategic decisions fell below an objective standard of

20   reasonableness or that but for counsel's inaction, the result of the trial would probably have

21   been different.

22         Petitioner complains that the R&R erred by failing to find that his attorneys were

23   ineffective for not locating or interviewing certain witnesses or consulting with him about

24   a map of the area so they could find the 7-eleven security tapes.  But there is no evidence

25   that there was an operable security camera in the parking lot, that any such camera would

26   have caught on video activities of the victim in the parking lot on the date in question, how

27   long such video would have been available to be retrieved, or, if such video ever existed,

28   that it contained exonerating information. Again, Petitioner presents no evidence that

supports his argument.   Additionally, Ms. Anderson's explanations establish that the Defense team "spent considerable time and resources" unsuccessfully seeking to locate and interview the witnesses, including the driver of the truck who picked up Petitioner and the victim on the night of October 4, 2015, whom Petitioner calls "Rickie Todachinee," (Doc. 32-1 at 7 ¶ 16) and Nikki Tallis, who Melinda talked to (CR Doc. 180 at 41-42).

After reviewing the efforts made by Defense counsel, the R&R correctly applied the "strong presumption" that Defense counsel acted within the "wide range" of reasonable professional assistance and concluded that Defense counsel's efforts to locate witnesses and evidence was not objectively unreasonable.   Petitioner has not shown a reasonable probability that with the testimony of either of these witnesses the result of his trial would have been different.

Petitioner has not shown that any of the potential witnesses would have supplied helpful testimony.   His self-serving statements are not evidence.   *See Dows v. Wood*, 211 F.3d 480, 486 (9th Cir. 2000).   Petitioner has not provided an affidavit from any potential witnesses stating what he or she would attest to.   Moreover, there is no evidence that any of his missing witnesses would be willing to testify.   *See United States v. Harden*, 846 F.2d 1229, 1231-32 (9th Cir. 1988) (no ineffective assistance based upon counsel's failure to call a witness where, among other things, there was no evidence in the record that the witness would have testified). Petitioner has failed to demonstrate either deficient performance by Defense counsel or prejudice regarding the Defense's decision not to call these witnesses or the failure to secure the alleged 7-Eleven security camera video. Objections 13, 14 and 15 are overruled.

**XVIII.    Objection 16**

In his sixteenth objection, Petitioner faults the R&R for not finding that his counsel was ineffective for not obtaining the cell phone GPS data from the victim's cell phone that was left in the wilderness after Petitioner purposely broke it.   He claims that this cell phone data would have established that his version of the facts was accurate.   Ms. Anderson agrees it is possible the cell phone data might have proved helpful to Petitioner's case and, because

1    she does not recall what she told Petitioner about the cell phone, she has no reason to doubt

2    Petitioner's statement that she told him it was irretrievable because it was a pre-paid

3    Walmart phone.  (Doc. 32-1 at 7 ¶ 15)

4          The R&R correctly determined that the location information that the cell phone

5    could have possibly provided was not relevant to any contested issue in the case.  The R&R

6    correctly determined that, even if counsel should have found the phone, there has been no

7    showing that, but for counsel's inaction, the result of the trial would probably have been

8    different.  Objection 16 is overruled.

9    **XIX.   Objection 17**

10         In his seventeenth objection, Petitioner claims the R&R erred in its factual

11   determinations that Melinda, the victim's sister, was not coerced into making "the factually

12   impossible accusation that [Petitioner] punched/knocked out O.C. (the victim) next to the

13   car" and "grabbed onto O.C. ankles and then literally dragged O.C. away, on her back side

14   and dragged her out into the desert[.]"  (Doc. 59 at 22.)  Petitioner argues that his attorneys

15   were ineffective for not finding physical and medical evidence inconsistent with that

16   testimony.

17         Again, Petitioner's objections are not supported by evidence.  Petitioner's alleged

18   inconsistencies do not prove that Melinda was coerced into lying to convict him.  His

19   alleged physical evidence is not probative.  Petitioner's disagreement with the jury provides

20   no basis for the Court to reject the findings of the R&R.  Petitioner does not explain what

21   conduct of his attorneys did not meet the objective standard.  Neither prong of the

22   *Strickland* test is met.  Objection 17 is overruled.

23   **XX.    Objection 18**

24         In objection eighteen, Petitioner argues that the R&R should have addressed

25   whether he is entitled to Good Samaritan immunity.  Petitioner does not define or cite

26   authority for his claim that he is entitled to any immunity.  There is no evidence offered in

27   the motion (or at trial) that any of Petitioner's conduct would qualify for any immunity.

28         Petitioner also argues that the FBI distorted and fabricated the tape recording of his

- 21 -

interview.  Petitioner does not support this accusation with evidence.  His arguments and speculation are not evidence.

Petitioner also argues that his attorney stipulated to the admission of the tape-recorded interview without clearing it with him.  Petitioner has not shown that there was anything that his attorneys should have done or that, had an objection been raised, it probably would have been granted and, if granted, the outcome of trial probably would have been different.  The R&R correctly found that Petitioner failed to establish either prong of the *Strickland* test.  Objection 18 is overruled.

## XXI.   Objection 19

The nineteenth objection claims the R&R erred by failing to find Defense counsel ineffective for not asking a witness, N.N. Clifton Gilbert, if he found Petitioner's version of actual innocence to be truthful and that he did not charge him because he believed he was innocent.  Apparently, Petitioner believes Mr. Gilbert has some expertise and should have been asked to offer an expert opinion on Petitioner's guilt.  Such testimony would also vouch for Petitioner's credibility on that subject.

There is no evidence that this witness would have testified as Petitioner claims.  Additionally, the cross-examination that Petitioner claims should have occurred would have been inappropriate under the Federal Rules of Evidence.  Expert witnesses are not allowed to give opinion testimony about their beliefs of guilt or innocence.  The law does not allow opinion testimony on how the jury should decide the case.  Additionally, opinion testimony that does nothing but vouch for the credibility of another witness encroaches on the jury's exclusive function to make credibility determinations and therefore does not assist the tier of fact as required by Rule 702.  *United States v. Charley*, 189 F.3d 1251, 1267 (10th Cir.1999); *see also* Weinstein's Federal Evidence § 704.05.  Objection 19 is overruled.

## XXII. Objection 20

In this objection, Petitioner argues that the R&R, at page 42, erroneously found the victim's sisters, Melinda and Marcella, not to be on alcohol or methamphetamine and the

- 22 -

victim to be on alcohol, illegal pain pills, and marijuana.  The R&R correctly pointed out, beginning at page 42, that before trial, the Court had granted motions in limine precluding the evidence of the victim's September 2013 misdemeanor conviction for intoxication and assault.  The Court's ruling on the motions in limine also precluded the admission of evidence of the victim's or witnesses' use of alcohol prior to the date of the events in this case.  The Court also ruled that witness testimony that the victim became aggressive six years earlier when she was drunk was not admissible.  However, the Court ruled that evidence of the victim's, the witnesses', and Petitioner's drinking and/or drug use on the date in question was admissible, and that evidence was thoroughly presented to the jury. (CR Doc. 140 at 15, 57-58, 83-84, 85-88, 104-106, RT 9/07/2015; CR Doc. 180 at 53-54, 56, 60, 113, RT 9/08/2016.)  Nothing in the R&R indicates it found the victim and her sisters were not drinking and/or using drugs the day of the events in question.

The allegations in Petitioner's objection are not borne out by the record and do not accurately reflect the findings of the R&R at pages 42-44.  This objection is baseless. Objection 20 is overruled.

### XXIII.   Objection 21

This objection argues that the R&R erroneously or failed to address Petitioner's claim that his attorneys were ineffective in their cross-examination of the victim about her injuries because they did not have the 7-Eleven security camera tapes to impeach her. Petitioner claims these tapes would have shown that the victim's injuries were caused when she fell in the 7-Eleven parking lot.

Petitioner's objections are again based on his speculation that a security camera would have captured the victim and about what the camera might have shown.  Other than his allegations about how the victim was injured, which were rejected by the jury, there is no new evidence presented to support this objection.  This objection is baseless.  The Court has already addressed Petitioner's claim concerning the alleged failure to obtain the security camera footage.  For those same reasons, Objection 21 is overruled.

### XXIV.   Objection 22

In this objection, Petitioner alleges that the R&R erroneously applied the *Strickland* standard to his claim of ineffective assistance of counsel based on counsel's failure to hire a "photograph expert." This objection suffers from the same defect as other objections. Petitioner presents no evidence that supports his argument or that those alleged failures meet either prong of the *Strickland* test. There is no basis for the Court to find that an objective standard would have his counsel employ a "photograph expert" to essentially photoshop prejudicial material from the Government's photos or that hiring such an expert would have probably changed the outcome of the case. Objection 22 is overruled.

## XXV. Objection 23

The twenty-third objection again claims that the R&R erroneously applied the *Strickland* standard. This objection alleges that Petitioner's counsel was ineffective for failing to interview the victim's medical doctor before trial to support Petitioner's exculpatory explanation about the cause of the victim's injuries. This objection suffers from the same defect as other objections. Petitioner presents no evidence that supports his argument or that those alleged failures meet either prong of the *Strickland* test. Petitioner offers no evidence that the standard of care required such an interview or what exonerating evidence the doctor would have provided had he been interviewed as Petitioner claims he should have been. This objection is baseless. Objection 23 is overruled.

## XXVI.   Objection 24

The twenty-fourth objection alleges that the R&R erred by accepting facts alleged by witnesses at trial, the victim, and her sisters. The jury found Petitioner guilty. In doing so, it accepted the testimony of those witnesses and rejected that of Petitioner. Petitioner's motion and his objection offers no new evidence or any reason for the R&R to have found that the witnesses were lying. Petitioner's unsupported allegations that the witnesses lied does not raise any valid claim that his "constitutional rights were violated." Objection 24 is overruled.

## XXVII.   Objection 25

The twenty-fifth objection alleges that Petitioner's attorneys were ineffective for not bargaining for an *Alford* plea that would have allowed him to be sentenced with a ten-year cap but maintain his claim of actual innocence.  Petitioner presents no evidence that supports his argument that those alleged failures meet either prong of the *Strickland* test.  There is no evidence that the Government would have agreed to such a plea agreement or that Petitioner would have accepted it.

Ms. Anderson explained the plea negotiations in her declaration.  (Doc. 32-1 at 5 ¶ 9.)  Petitioner rejected all offers from the prosecution and maintained that he would not take a plea.  Ms. Anderson stated she had reviewed the offers with Petitioner on April 27, 2016, and that he "respectfully declined" them.  That decision was consistent with his position previously that "he had no interest in any plea for any amount of time." (*Id.*)  Even at the settlement conference Ms. Anderson arranged with the prosecution during which Petitioner was able to speak directly with the prosecutor, Petitioner maintained his position that he would not enter into a plea agreement.  (*Id.*)  Petitioner rejected all plea offers and insisted on going to trial.  Objection 25 is overruled.

### XXVIII.  Objection 26

Objection 26 alleges that the R&R erroneously applied the *Strickland* standard to Petitioner's claims that his counsel did not meet with him to prepare for trial in any meaningful way.  This objection is not supported by any facts.  This objection is a summary of other overruled, unsupported arguments made by Petitioner in his objections to the R&R.  This objection is baseless.  Objection 26 is overruled.

### XXIX.   Objection 27

Objection 27 is a claim that the R&R erred in its consideration of Petitioner's "freestanding claim of Actual Innocence."   The standard for establishing entitlement to relief on a freestanding actual innocence claim is "'extraordinarily high.'"  *Carriger v. Stewart*, 132 F.3d 463, 476 (9th Cir. 1997) (quoting *Herrera v. Collins*, 506 U.S. 390, 417 (1993)).  To prevail on such a claim, a movant "must go beyond demonstrating doubt about his guilt and must affirmatively prove that he is probably innocent."  *Id.*  This standard is

even higher than that applied by courts considering a miscarriage of justice exception to procedural default, which "is not an independent avenue to relief[,]" but rather, "if established, . . . functions as a 'gateway,' permitting a habeas petitioner to have considered on the merits claims of constitutional error that would otherwise be procedurally barred." *Id.* at 477 (citing *Schlup v. Delo*, 513 U.S. 298, 315-16 (1995)).

Instead of producing evidence that affirmatively proves that he is probably innocent, Petitioner argues that the R&R erred by not providing evidence from the record "that can disprove any part of the Movant's crime scene reconstruction[.]"   (Doc. 59 at 25.) Petitioner is confusing the burden of proof.  It rests with him, not the Government nor the Magistrate Judge authoring the R&R.  Petitioner fails to meet his burden of proof and has not presented information or facts sufficient to raise a question warranting an evidentiary hearing.  Objection 27 is overruled.

### XXX. Objection 28

In the twenty-eighth objection, Petitioner argues that the R&R erred by failing to apply the exclusionary rule to exclude the testimony of FBI Special Agent Sutherland.  He argues that Sutherland's testimony should have been excluded because he lied under oath and because he coerced Melinda into a false statement about Petitioner.  Petitioner argues that Sutherland's misconduct affected Petitioner's "credibility with the jury and trial court and appellate court and Supreme Court."  (Doc. 59 at 26.)

The R&R correctly found that this claim was procedurally defaulted because it was not raised at trial.  Because Petitioner has not demonstrated that he is actually innocent, his procedural default on this issue is not excused.  Nonetheless, on the merits, his unsupported allegations that Sutherland was not truthful and that his testimony affected Petitioner's credibility is not evidence and does not establish any claim.  Objection 28 is overruled.

### XXXI.    Objection 29

The twenty-ninth objection argues that the R&R erred by rejecting Petitioner's clam of prosecutorial misconduct.  Petitioner claims the prosecution committed misconduct by framing him with his own blood for a crime committed by the victim's sister, Marcella.

He argues that the victim injured herself at the 7-Eleven and the prosecution committed misconduct by manipulating the jury when it chose not to call the real criminal, Marcella.

The R&R correctly determined that this claim was procedurally defaulted. The Court further points out that Petitioner's arguments are unsupported by any evidence other than his same assertions that were presented at trial and rejected by the jury. This habeas action is not intended to re-litigate the facts based on the same evidence heard by the jury. This objection is baseless. Objection 29 is overruled.

## XXXII.   Objection 30

Objection 30 argues that the R&R erred by failing to recommend an evidentiary hearing on physical evidence that Petitioner contends would exonerate him, such as the DNA of the blood on the victim's blouse, the GPS in the victim's broken cell phone, the crime scene, and a timeline.

An evidentiary hearing is not warranted if the record conclusively shows that Petitioner is either not entitled to relief or if, in light of the record, his claims are "palpably incredible or patently frivolous." *United States v. Withers*, 638 F.3d 1055, 1062 (9th Cir. 2011) (citing *United States v. Schaflander*, 743 F.2d 714, 717 (9th Cir. 1984)). The petition, files, and record of the case conclusively show that Petitioner is entitled to no relief. A request to consider each of those items was raised in previous objections and found to be meritless. Petitioner has presented nothing to show that any of the items for which he seeks a hearing would be exonerating. In most cases, such information would be of no material relevance. Petitioner has not shown that there are any questions of material fact that warrant a hearing. Objection 30 is overruled.

## XXXIII.  Objection 31

Objection 31 argues that the R&R erred by failing to recommend a bail hearing. The R&R correctly concluded that "the Court need not reach the question of whether it is authorized to grant bail in this matter because Movant plainly has not established either the existence of special circumstances or a high likelihood of success." (Doc. 51 at 59.) This objection is baseless. Objection 31 is overruled.

1    **XXXIV.   Objections 32 and 33**

2         Objections 32 and 33 are general objections to the R&R which argue that the R&R

3    was wrong in its factual and legal conclusions and therefore should be overruled.   The

4    argument that the R&R could have found merit in Petitioner's claims does not establish the

5    merits to any claim.   Objections 32 and 33 are overruled.

6    **XXXV.   Motion to Clarify Counts 3 & 4 (and 6) are not Within Indian Country**

7    **Within the Meaning of 18 U.S.C. § 1151(c)**

8         The question of jurisdiction was discussed and resolved in Petitioner's Objection 2

9    above.   No further clarification is necessary.

10        **IT IS ORDERED** as follows:

11        1.   Petitioner's Objections to the R&R (Doc. 59) are **OVERRULED**.

12        2.   The R&R (Doc. 51) is **ACCEPTED**.

13        3.   Petitioner's Motion to Vacate, Set Aside or Correct Sentence pursuant to 28

14             U.S.C. § 2255 (Doc. 5) is **DENIED**.

15        4.   Petitioner's Motion for Bail Hearing in Order to Grant Bail Pending a § 2255

16             Decision by the District Court (Doc. 47) is **DENIED.**

17        5.   Petitioner's Motion to Clarify Counts 3 & 4 (and 6) are not Within Indian

18             Country Within the Meaning of 18 U.S.C. § 1151(c) (Doc. 67) is **DENIED.**

19        6.   Petitioner's Motions (Docs. 61, 63, 66) are **DENIED.**

20        7.   A Certificate of Appealability is **DENIED** because Petitioner has not made a

21             substantial showing of the denial of a constitutional right.

22        8.   The Clerk of the Court shall enter judgment accordingly and terminate this

23             action.

24        Dated this 14th day of December, 2021.

25

26

27        Douglas L. Rayes
          United States District Judge

28